UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM B. LAESSLE,

    Plaintiff,

v.

                                      Case No. 13-11184

CENTRAL STATES, SOUTHEAST AND          HON. AVERN COHN
SOUTHWEST AREAS PENSION FUND,

    Defendant.

_____/

**MEMORANDUM AND ORDER
DENYING PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT (Doc. 10)
AND
GRANTING DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT (Doc. 11)
AND
AFFIRMING ADMINISTRATIVE DECISION
AND DISMISSING CASE**

**I. Introduction**

This is a benefits case under the Employment Retirement Income Security Act, 29 U.S.C. § 1001, et seq. (ERISA). Plaintiff William Laessle worked for North Electric Supply Company selling new electrical parts "over the counter" and was a member of the union. As a union member, plaintiff contributed to a multi-employer pension plan, administered by defendant Central States Southeast and Southwest Pension Fund ("Central States") and governed by ERISA. Plaintiff accepted an early retirement offer in July 2011 and began receiving pension benefits from the pension fund shortly thereafter. Following his retirement, plaintiff obtained employment at J&T Electrical Supply, Inc., a non-union company, conducting "outside sales" of used or reconditioned

electrical parts. On January 11, 2012, Central States notified plaintiff that his post retirement employment was "restricted reemployment" under the terms of the pension plan, making him ineligible to receive pension benefits. Central States therefore stopped paying his pension benefits and sought to recoup payments made to date. After pursing his administrative remedies, plaintiff sued Central States claiming a violation of 29 U.S.C. § 1132(a)(1)(B).[1]

Before the Court are cross motions for judgment. For the reasons that follow, plaintiff's motion is DENIED and Central States' motion is GRANTED. Central States' decision finding plaintiff ineligible to receive pension benefits based on his employment at J&T Electrical Supply Company is AFFIRMED. A separate judgment will enter accordingly.

## II. Legal Standard - Motion for Entry of Judgment

In Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609 (6th Cir.1998), the Court of Appeals for the Sixth Circuit held that summary judgment procedures are not appropriate in the Sixth Circuit in denial of benefits actions under ERISA. Rather, a district court should adjudicate an ERISA action as if it were conducting a standard bench trial and, therefore, determining whether there is a genuine issue of fact for trial would make little sense. Wilkins, 150 F.3d at 618-19 (Gilman, J., concurring in part and setting out the judgment of the court of appeals on the issue regarding the summary judgment standard).

Accordingly, the Court will decide this matter under the guidelines set forth in

---

[1]Plaintiff also asserted a promissory estoppel claim, which he later dismissed. See Doc. 7.

Wilkins[2] by rendering findings of fact and conclusions of law based solely upon the administrative record. See Eriksen v. Metropolitan Life Ins. Co., 39 F. Supp. 2d 864 (E.D. Mich. 1999).

### III. Standard of Review

The parties agree that the standard of review in this case is whether the denial of benefits was arbitrary and capricious because, as set forth in detail below, Central States has discretionary authority to construe and interpret the provisions of the pension plan. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991). This standard is the "least demanding form of judicial review." Administrative Committee of the Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson, 164 F.3d 981, 989 (6th Cir. 1999). This requires "review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." McDonald v. W.-S. Life Ins. Co., 347

---

[2] The court of appeals' "Suggested Guidelines" are as follows:
1. As to the merits of the action, the district court should conduct a de novo review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
3. . . . the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.
150 F.3d at 619.

3

F.3d 161, 172 (6th Cir.2003). The plan administrator's decision should be upheld if it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." Glenn v. MetLife, 461 F.3d 660, 666 (6th Cir. 2006), aff'd, Met. Life Ins. Co. v. Glenn, --- U.S. ----, 128 S.Ct. 2343 (2008). The standard, although deferential, is not "inconsequential." Moon v. Unum Provident Corp., 405 F.3d 373, 379 (6th Cir. 2005). "While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." Id.

### IV. Findings of Fact

The following facts are gleaned from the administrative record.

### A. Central States' Pension Fund

Central States' pension fund is administered by an equal number of employer trustees and employee trustees. Employer trustees are officers of Employer Associations in the Teamster Industry. Employee trustees are officials of Teamster unions. The pension fund has over 422,000 participants. There are over 73,000 active participants and over 178,000 retired participants receiving benefits. There are over 131,000 vested participants entitled to future benefits and over 31,000 beneficiaries of deceased participants who are receiving or entitled to receive benefits. Over 2,000 employers contribute to the pension fund.

Plaintiff's pre-retirement employer, North Electric Supply Company, is a participating employer.

Under the Central States Pension Fund Trust Agreement, the Trustees of the pension fund have discretionary power and authority to administer the trust in the

interest of the participants and beneficiaries of the pension fund and grants the Trustees discretionary power and authority to decide claims for benefits and construe the terms of the pension plan. The discretionary grants of authority granted to the Trustees, include the power to manage the operation and administration of the trust in accordance with applicable law. The Trust Agreement states that the Trustees are authorized to formulate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the trust. All rules and regulations adopted by the Trustees shall be binding "upon all parties hereto" and "all persons claiming any benefits hereunder." The Trust Agreement also states that the "Trustees are vested with discretionary and final authority in adopting rules and regulations for the administration of the Trust Fund."

    The Trust Agreement provides that the Trustees have the power to construe the provisions of the Trust Agreement and "any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers". It states that the Trustees are vested with discretionary and final authority construing plan documents.

    The Trust Agreement also provides that the Trustees have the power to determine controversies. It states that all questions or controversies arising between any parties in connection with the pension fund or its operation, whether as to any claim for benefits or as to the construction of the language or meaning of the rules and regulations adopted by the Trustees, shall be submitted to the Trustees, or to a Committee of the Trustees "and the decision of the Trustees or of such committee thereof shall be binding upon all persons dealing with the Fund or claiming any benefits

hereunder."

Finally, the Trust Agreement states that the Trustees are vested with discretionary and final authority in making all such decisions on claims for benefits by participants and beneficiaries of the pension fund. The Trust Agreement requires that the Trustees use and apply the pension fund to pay retirement benefits to eligible employees "in accordance with terms, provisions and conditions of the Pension Plan to be formulated and agreed upon hereunder by the Trustees."

### B.  Relevant Provisions of the Pension Plan

The pension plan at issue is the "Central States, Southeast and Southwest Pension Plan," as amended through May 1, 2012. The pension plan contains rules regarding qualifications for all of the various pension benefits offered by Central States. It also contains rules relevant to all retired participants, including plaintiff for suspension of pension benefits where a retired participant is engaged in reemployment after retiring prior to age 65. Such employment after retirement is restricted, as described below.

Section 4.13 of the pension plan provides in part:

(a)  The Pension Plan shall permanently suspend all Periodic Benefit Payments of Pensioner ... during periods of his Reemployment to the following extent:
...
(2)  all Periodic Benefit Payments to a Pensioner shall be permanently suspended during all periods of his Restricted Reemployment ....

Section 4.13(g)(3) of the plan defines "restricted reemployment" as follows:

(3) Restricted Reemployment means and includes any of the following, except that, effective as of April 9, 2009, a Pensioner age 65 or older, and who for a period of 12 months following his Retirement Date has not been engaged in any categories of reemployment described below in subsections (A) - (E) that would subject him to a suspension of benefits, shall not be deemed to be in Restricted Reemployment, regardless of the position or number of hours worked:

(A) Reemployment in a Core Teamster Industry (as defined in paragraph 4.13(g)(4)), except that a Pensioner that has reached age 65 may work a maximum of 40 hours per month in such a position;

(B) Reemployment by a Contributing Employer (or an employer which was a Contributing Employer at any time after September 25, 1980), except that a Pensioner that has reached age 65 may work a maximum of 40 hours per month in such a position;

(C) Reemployment in any position (or supervising any position) that is covered by a Teamster Contract between that employer and any affiliate of the International Brotherhood of Teamsters, except that a Pensioner that has reached age 65 is not subject to this subparagraph (C);

(D) Reemployment in any position in the same industry in which the Pensioner earned Contributory Service Credit while covered by the Pension Fund, except that a Pensioner that has reached age 60 is not subject to this subparagraph (D), and except that a Pensioner that has reached age 57 but has not reached age 60 may work a maximum of 80 hours per month in such position; or

(E) Reemployment in any position in the same job classification as any other Participant then employed by a Contributing Employer located within 100 miles of the position, except that a Pensioner that has reached age 60 is not subject to this subparagraph (E), and except that a Pensioner that has reached age 57 but has not reached age 60 may work a maximum of 80 hours per month in such position.

(4) Core Teamster Industry means and includes Reemployment in any of the following industries:
(A) trucking and/or freight;

(B) small package and/or parcel delivery;

(C) car haul;

(D) tank haul;

(E) warehouse;

(F) food processing and/or distribution (including grocery, dairy, bakery, brewery, and soft drink

### C.  Plaintiff's Employment and Retirement

Plaintiff was employed for 35 years with North Electric Company.  During his

employment, he was a member of the International Brotherhood of Teamsters, Local Union No. 247. Plaintiff's job classification was a "Truck Driver/Warehouseman." However his job duties throughout his employment involved working behind a sales counter and selling new electric parts.

As a union member, plaintiff made contributions to and was a fully vested beneficiary in the pension plan. As a result of his employment with North Electric Supply Company, plaintiff earned 34.550 years of Contributory Credit which established, subject to the plan's reemployment rules, his eligibility for a Class 16, 34 year contributory pension in the amount of $1,678.25 per month for life, based upon his age (54) at his retirement on June 30, 2011.

On or about October 27, 2008, plaintiff contacted Central States by telephone and made inquiry about his reemployment opportunities after a potential early retirement, indicating that he was "considering outside sales." He spoke with Lucille Jefferson, a reemployment analyst for Central States. Plaintiff says he specifically asked Jefferson about employment in outside sale "of reconditioned parts" and Jefferson told him that would be okay. Jefferson sent plaintiff several documents, including a copy of Central States Approved Reemployment General Guidelines, a Reemployment and Suspension of benefits Rule, and a Reemployment Questionnaire.

The Guidelines, in relevant part, state that Central States "must review specific proposed work on a case-by-case basis to determine whether you could perform such work while receiving your pension benefit…" The Guidelines also state:

> Although it is not possible to provide a comprehensive list of jobs that would be acceptable for all pensioner in all parts of the country, as long as your potential reemployment is not for a Contributing Employer and as long as it is not

>covered by a Teamster Collective Bargaining Agreement or it is not the same industry in which you rear4ned Contributory Service Credit with the Fund, the following examples of work are generally permitted for an unlimited number of hours regardless of where you live:
>. retail sales clerk, stocker - tow truck driver -unarmed security
>. farm work (but not including hauling products or supplies)
>. government employment - any type of work provided the paycheck comes directly from a governmental entity
>. non profit (charity) employment - any type of work
>. restaurant - residential landscaping
>. residential construction - carpenter, plumber, HVAC, handyman gofer (but not excavation, concrete work or material delivery)
>. residential newspaper delivery
>. sales (excluding delivery or merchandising)
>. driver trainer for a school (but not a trucking company)

The Reemployment Questionnaire instructed plaintiff to "[p]lease complete this form in its entirety and return it to us so that we can determine whether a specific job you are considering or have accepted is within the rules."

On January 10, 2011, plaintiff telephoned Central States and requested reemployment rules. That same date, Central States wrote plaintiff and again provided him the Reemployment General Guidelines, the Reemployment and Suspension of Benefit Rules and a Reemployment Questionnaire.

On March 4, 2011, Central States received a Pension Application and a Retirement Declaration Form dated February 28, 2011 from plaintiff, naming June 30, 2011 as his retirement date. The Retirement Declaration Form contained a certification required of the participant. The participant was required to check a box stating "I have not been employed in any capacity (including self-employment) at any time after my retirement date. (emphasis in original) I agree that if I do become employed after retirement, I will notify the Fund". The alternative box to be checked stated, " I have worked and/or plan on working beyond my retirement date in the following capacity

9

(including self-employment)." Plaintiff signed the Retirement Declaration Form on February 28, 2011 and did not have either box checked.

On April 11, 2011, Central States wrote plaintiff and confirmed receipt of his retirement documents and noting that his Retirement Declaration Form was incomplete. As a result, his application would be put on hold in order for him to complete the form.

On April 26, 2011 Central States received plaintiff's completed Retirement Declaration Form dated April 8, 2011, which again named June 30, 2011 as his retirement date. The Retirement Declaration Form checked the box stating that plaintiff certified "I have not been employed in any capacity (including self-employment) at any time after my retirement date. I agree that if I do become employed after retirement, I will promptly notify the Fund". Plaintiff retired on June 30, 2011 at age 54. He began receiving a monthly pension benefit shortly thereafter.

### D. Post Retirement Events

#### 1. Plaintiff's Employment

On August 1, 2011, plaintiff began working part time for J&T Electrical. Plaintiff worked as an outside sales person selling only reconditioned electric parts. Plaintiff uses his own vehicle to make these outside sales calls and does not deliver any parts

On September 30, 2011, plaintiff's pre-retirement union employer, North Electric Supply, sent a note to Linda Townsend, the business agent at Teamster Local Union 247. The note said that Frank Nut, the president of North Electric Supply had called J&T Electrical Supply on September 30, 2011 at 7:28 a.m. and asked for plaintiff.[3] The

---

[3] Plaintiff's former employer somehow became aware that plaintiff was working at J&T Electrical Supply, which is apparently a competitor.

president of North Electric Supply said he was told plaintiff was busy waiting on a customer.  After reviewing the note from North Electric Supply, Townsend called Central States and stated that plaintiff was working at a non-union competitor, handing out business cards and causing "a lot of grief for our Participating Employer."

After receiving this information from the union, Central States sent plaintiff a request for certification of his employment status.  Plaintiff completed the certification and returned to Central States on December 15, 2011.  In the certification, plaintiff stated that he was reemployed for three days a week, 5-7 hours daily at J&T Used and Reconditioned Equipment.  Plaintiff also stated that the business activity was sales and reconditioning and his job title was sales/buyer/reconditioner.  Plaintiff stated that his hire date was September 1, 2011 and he was still employed at the company.  Plaintiff also noted on the form that he had called Central States to "check if it was ok. They told me it shouldn't be any problem".

Central States then checked J&T Electrical Supply's website.  The website, describing its business, states, "J&T Electrical Supply has been providing competitive prices on industrial, commercial and residential electrical products since 1982.  We offer new, reconditioned and used parts that are backed by our 100% guarantee.  We ship worldwide!  Check out our <u>new product line</u> and our online store of new, surplus, refurbished and used products."  (emphasis in original).

### 2.  Central States' Determination

On January 11, 2012, Central States wrote plaintiff stating that is considered his employment with J&T Electrical Supply to be "restricted reemployment" under the terms

of the plan and therefore he was disqualified from receiving retirement benefits. The letter states in part:

> This work is considered Restricted Reemployment because it is
> * in a core teamster industry-construction and building materials
> * in the same industry in which you worked while earning Contributory Service Credit with the Pension Fund
> * the same classification of work performed by other Pension Fund Participants within 100 miles.
> Please see Section 4.13 of the Pension Plan (copy enclosed) for an explanation of the Fund's reemployment policy and rules concerning…

### E. Plaintiff's Administrative Appeal

On April 23, 2012, plaintiff, through counsel, submitted an appeal of the January 11, 2012 decision. The appeal included plaintiff's affidavit, in which he states:

> . During 35 years of employment with North Electric Supply, his employer never sold reconditioned electric parts.
> . There was no Teamster organized business or pension fund contributor engaged in the sale of reconditioned electric parts on an outside sales basis within 100 miles of Plaintiff's former employer

On appeal, plaintiff argued that while employed with North Electric Supply, the company did not sell or stock reconditioned electrical parts and there were no pension fund participants engaged in the sale of reconditioned electrical parts within 100 miles of his position. Plaintiff also argued that he asked about this potential employment before retiring and was told it was okay; therefore Central States is estopped from now contending otherwise.

On May 1, 2012, Central States wrote plaintiff's counsel and explained that the January 11, 2012 denial letter was inaccurate regarding his appeals rights. Central States explained that the determination in the January 11, 2012 letter was a staff determination and should have advised plaintiff of his right to appeal to the Benefit

Claims Appeals Committee.  Central States then explained that the pension plan provides a two-step appeals process.  The first set is a review by the Benefits Claims Appeals Committee and the second step is a review by the Trustee Appellate Review Committee.  Central States advised plaintiff's counsel that it would present plaintiff's appeal to the Benefit Claims Appeals Committee, step one in the appeals process, at the committee's May 17, 2012 meeting.  If plaintiff disagrees with committee's determination, he may appeal to the Trustees, step two of the appeals process.

On May 17, 2012, Central States' Benefits Claim Appeals Committee met to consider plaintiff's appeal.  The one page minutes from this meeting includes the following "comments:"

> Mr. Laessle is appealing Staff's decision that his work for J&T Electrical is Restricted Reemployment.  The Fund received an anonymous call stating that Mr. Laessle was performing work in the same industry in which he earned Contributory Service Credit (Electric Supply).  Staff sent a screening packet which was returned by Mr. Laessle confirming his work.
> Mr. Laessle's Attorney submitted a copy of the Fund's general Guidelines indicating that non-driver sales were approved on Mr. Laessle's behalf. He further states that Mr. Laessle did not perform sales, there is information on file that proves he did engage in counter sales.

On May 21, 2012, Central States sent a letter to plaintiff's counsel denying plaintiff's appeal based on a finding that plaintiff's reemployment was "(1) in a Core Teamster Industry (warehouse and/or building materials), (2) in the same industry in which he earned Contributory Service Credit, and (3) in the same job classification as other Participants employed by a Contributing Employer located within 100 miles of his position."  The letter also confirmed Central States' intent to recover from plaintiff the $11,747.75 in benefits that Central States maintains were wrongfully paid to plaintiff.

On August 12, 2012, plaintiff's counsel filed an appeal of the May 21, 2012

13

decision to the Trustee Appellate Review Committee. As part of the appeal, plaintiff submitted an updated affidavit in which he stated that reconditioned electric parts are not considered "building materials." Plaintiff also argued:

. Outside sales of reconditioned electrical parts does not fit in any of the seven enumerated "core industries" in the plan;

. Plaintiff's reemployment was not in the "same industry" as his prior employment because outside sales of reconditioned electric parts was clearly different than over the counter sales of new electric parts

. There was no evidence that plaintiff was working in the same classification as other participants within one hundred miles.

On November 8, 2012, the Trustee Appellate Review Committee met to consider step two of plaintiff's appeal. The committee's minutes include a detailed description of the background of plaintiff's claims and his argument, as well as the committee's conclusion. The minutes read:

> After a full discussion, a motion was made, seconded and unanimously carried to determine, on the basis of all the facts and circumstances presented to in the record, that William B. Laessle's employment as a salesperson with J&T Electrical Supply, Inc. is Restricted Reemployment in (1) a Core Teamster Industry (building material and/or construction), (2) the same industry in which he earned Contributory Service Credit while covered by the Pension Fund, and (3) same job classification as other Participants within 100 miles of his position. The Trustees further determined to enforce the Fund's right to receive restitution of retirement pension benefit payments made during the period of this Restricted Reemployment, limited to the amount of his gross reemployment wages, if less.

> Although Mr. Laessle represented that he relied on the Fund's approval of his intended reemployment in making his decision to take early retirement, the Trustees found no documents were submitted or contained with Central States' records supporting Mr. Laessle's claim that his reemployment was approved by the Pension Fund. They noted that the Fund's January 10, 2011 letter contains no reference to any specific employment and the Approved Reemployment General Guidelines it enclosed advised that the Fund must review specific proposed work on a case-by-case basis. These Guidelines instructed Mr. Laessle to complete and return the enclosed Reemployment Questionnaire so that Central States can determine whether a specific job is within the rules. Mr.

Laessle did not submit, nor does he claim to have submitted, a completed Reemployment Questionnaire. The Trustees also noted that Mr. Laessle failed to notify Central States of his intended reemployment on his Retirement Declaration Form. The Trustees noted that instead, he checked the box applicable to Participants with no specific plans to work after retirement. In addition, in spite of his agreement to promptly notify the Fund if he returned to work in any capacity, Mr. Laessle failed to notify the Fund of his reemployment when it began on or about August 11, 2011, and he did not disclose it until several months later when Central States specifically inquired whether he had worked after retiring.

The Approved Reemployment General Guidelines lists sales (excluding delivery or merchandising) as an example of work that is generally permitted as long as it is not in the same industry in which the Pensioner earned Contributory Service Credit with the Fund or violate other rules. However, the Trustees concluded that Mr. Laessle is working in the same industry in which he earned Contributory Service Credit with the Fund. The Trustees also concluded that his sales position is the same job classification as other Participants employed by a Contributing Employer within 100 miles of his position. The Trustees further concluded that J&T Electrical Supply is in both (1) the warehouse industry (the company operates an electrical supply warehouse with storefront), and (2) the building materials industry (electrical products are building materials), and as an employee of J&T Electrical Supply, Mr. Laessle is also in the Core Teamster Industries of warehouse and building materials.

On November 13, 2012, Albert Nelson, Benefit Services Director for Central States wrote plaintiff's attorney, with a copy to plaintiff, explaining the Trustee Appellate Review Committee denied his appeal and affirmed the decision that plaintiff is not eligible to receive pension benefit payments for any month during which he is employed as a salesperson for J&T Electric Supply because that employment is Restricted Reemployment. The determination letter, as Central States calls it, essentially restates the minutes of the committee's meeting as the basis for the final determination.

## V. Conclusions of Law

### A. ERISA Permits Rules Restricting Pension Eligibility

As an initial matter, there is nothing unusual in Central States' limiting a participant's ability to receive pension benefits if they retire early, before age 65. Although ERISA prohibits a pension plan from failing to make payments to a participant who has reached the normal retirement age, ERISA also creates a limited exception for eligible participants who have reached normal retirement age but continue to work. 29 U.S.C. § 1053(a) provides in relevant part:

> (a) Nonforfeitability requirements
>
> Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.
>
> (3)(B) A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed, subsequent to the commencement of payment of such benefits-
>
> ....
>
> (ii) in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced.
>
> The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph, including regulations with respect to the meaning of the term "employed".

29 U.S.C.A. § 1053(a). Thus, Central States' prohibition on the receipt of pension benefits for participants engaged in restricted reemployment who retire before age 65 is consistent with ERISA.[4]

---

[4] The Court of Appeals for the Sixth Circuit has examined and upheld Central States' provision on restricted reemployment. See Gardner v. Central States, Southeast & Southwest Areas Pension Fund, No. 93-3070, 1993 WL 533540 (6th Cir. Dec. 21, 1993); Whisman v. Robinson, 55 F.3d 1140 (6th Cir. 1995).

## B. Central States' Decision Was Not Arbitrary or Capricious

Central States' decision was neither arbitrary or capricious and was consistent with the plan provisions. The plan states that restricted reemployment is employment is employment that is one of the following three: (1) in a Core Teamsters Industry, (2) the same industry in which the employee previously worked, and (3) has the same job classification as another plan participant (Teamster member) employed by a contributing employer (such as North Electric Supply Company) within 100 miles. Plaintiff's employment meets all three of these definitions, as explained below.

The crux of this case is plaintiff's contention that working in outside sales selling used or reconditioned electrical parts is wholly different from working in a store selling new electrical parts. This argument cuts too fine. Plaintiff is advocating for a definition of restricted reemployment that is far narrower than what the plan provides.[5] Plaintiff's employment at J&T Electrical Supply clearly meets this definition, as Central States explained to plaintiff during the appeal process.

First, his employment was in a "Core Teamsters Industry" - warehousing and/or building materials. While plaintiff says that his employment should not be classified as in the warehousing industry because he is working in sales outside of the building, this

---

[5]The record contains some evidence that plaintiff was also involved in counter sales at J&T Electrical Supply based on the information received from North Electric Supply Company. While plaintiff denies he ever engaged in counter sales, it makes no difference as it is clear plaintiff was involved in the same Core Teamsters Industry, and indeed the same industry as his pre-retirement employment. Selling electrical parts inside or outside of an electrical supply company, whether used or not, makes no difference. The plan definitions of restricted reemployment are not as limiting as plaintiff suggests.

argument ignores that J&T Electrical Supply operates from an electrical supply warehouse. That plaintiff says he only does sales outside of the company's building is insignificant. Moreover, plaintiff's argument that reconditioned electrical parts are not "building materials" is not tenable.

Second, plaintiff's employment is in the same industry as his pre-retirement employment. Both J&T Electrical Supply and North Electrical Supply are in the business of selling electrical parts. That J&T Electrical Supply sells both new and reconditioned parts and North Electrical Supply Company sells only used parts is a distinction without a difference.

Third, because both employers are in the same industry and are located within 100 miles of one another, it is clear that plaintiff's reemployment is in the same job classification of other plan participants–employees of North Electrical Supply Company. Central States also identified other electrical parts companies located within the 100 mile radius.

In sum, Central States reasonably concluded that plaintiff worked selling electrical parts before he retired and after he retired. It also reasonably concluded that both companies are in the building materials industry because electrical products are building materials and both are in the warehousing industry as both operate from warehouses. Finally, Central States reasonably concluded that other covered employees work within 100 miles of J&T Electrical Supply in sales of electrical parts.

Plaintiff makes much of his affidavit in which he presents his arguments as to why he believes his employment is not restricted reemployment and says the record does not contain any evidence to the contrary. Plaintiff is wrong. Central States did not

have to rely on or accept plaintiff's assertions in his affidavit in light of its rational decision, which was based on a comparison of both companies and plaintiff's job duties at both companies, that plaintiff was engaged in restricted reemployment.

Similarly, plaintiff's argument that Central States' decision was flawed because plaintiff asked, and was told by Lucille Jefferson at Central States, that his position at J&T Electrical Supply was permitted does not carry the day for him. The log of the phone conversation shows that plaintiff requested a confirmation letter of the conversation. Jefferson then wrote plaintiff as requested and enclosed all of Central States' guidelines concerning reemployment. The fact that nowhere in the letter did Jefferson state that his reemployment was permissible contradicts plaintiff's claim that he received permission. Moreover, the guidelines make clear that Central States reviews the specific work assignment on a case by case basis to determine if it is restricted reemployment. In order to do that, plaintiff first needed to fill out a questionnaire so Central States could make a determination. Plaintiff did not do that before he began working for J&T Electrical Supply. Thus, it is fair to conclude, as Central States did, that plaintiff was not given permission by Jefferson.

As Central States says in its response to plaintiff's motion:

> When Laessle retired, he simply moved to a nonunion job with a competitor of North Electric Supply and again engaged in electrical supply sales. Selling electrical supplies was what he had experience doing while he worked at North Electric Supply, so it was logical that he found a new job at J&T Electrical Supply, where he could use the experience he had gained. He argues that the difference is that at North Electric Supply his job was inside sales of new equipment, but at J&T Electrical Supply he did outside sales of reconditioned equipment. But that distinction has no relevance. In both jobs he sold electric equipment in the building material and construction industry. He can not reasonably expect to collect a pension from Central States while he continues to work a few miles away from his pre-retirement job, in the same job classification, in the same type

of business, in the same industry.

(Doc. 14 at p. 11).

Central States' determination that plaintiff's employment at J&T Electrical Supply meets the plan definition of restricted reemployment was based on an examination of the record and resulted from a reasonable interpretation of the evidence in the record. There is no basis for overturning Central States' decision.

SO ORDERED.

    s/Avern Cohn
UNITED STATES DISTRICT JUDGE


Dated: November 13, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 13, 2013, by electronic and/or ordinary mail.

    s/Carol Bethel for Sakne Chami
Case Manager, (313) 234-5160